## Commonwealth v. Cohen et al.

*Clarence A. Emery,* for Commonwealth; *Edward A. Kane,* for defendants.

KNIGHT, P. J., February 2, 1934.—The defendants were convicted as professional thieves before a justice of the peace under the Act of June 7, 1901, P. L. 492. They appealed to this court, where the matter was heard before the writer of this opinion, who found them guilty. They then moved for a new trial, and the case was argued before the court en banc. The reasons assigned in support of the motion are that the finding of the trial judge is against the law, the evidence, and the weight of the evidence.

Counsel for the defendants, in the oral argument, found no fault with the finding that the defendants were arrested in an inhibited place and that they were there for an unlawful purpose. He did seriously object to the finding that they were professional thieves. Let us first consider the evidence that is not objected to.

The defendant Miller used an alias; he had been convicted once of larceny from the person, and had been arrested a number of times and discharged. The defendant Cohen also used an alias; he had been convicted of a violation of the Narcotics Act, and had been arrested a number of times, once in the company of a known pickpocket. There is, also, no evidence that either of these men had a respectable occupation and earned an honest living. In addition, four police officers of the City of Philadelphia testified that they knew the defendants and that they were professional thieves. It is this latter evidence which counsel for the defendants contends is improper and irrelevant. He argues that the only competent evidence to show that the defendants were professional thieves is a record of prior convictions of larceny.

We cannot adopt this view. There are other ways of gaining knowledge of a person's occupation beside having it proved in a court of law. There are professional thieves who may never have been caught, but that makes them none the less professional thieves. In our recent experience with the eighteenth amendment, it was a matter of common knowledge in almost every community that certain individuals were bootleggers, although they may never have been arrested and convicted of a violation of the liquor laws.

To put the converse of the proposition, we constantly state as a matter of fact that this individual is an honest man or that that individual is a chaste woman, although the honesty of the one or the chastity of the other has never been proved in legal proceedings.

Since the case was tried, we have found one additional authority which throws a little light on the subject, the case of Commonwealth v. Blieden, 52 Pa.

Superior Ct. 221, involving a situation in which bail had been given for the appearance at a continued hearing before a magistrate of two defendants arrested under the act in question. The defendants absconded, and the bondsman was arrested for perjury. In the lower court, Judge Sulzberger, an eminent Philadelphia jurist, said in his opinion on the motion to quash the indictment, "The defendants [speaking of the alleged professional thieves], were identified as pickpockets; they were arrested in a crowd on the platform of a car, and they were suspected of actually having picked pockets." Here, too, the defendants were identified as pickpockets by four Philadelphia detectives who knew them.

It is further argued that, inasmuch as no evidence was given of the good reputation of the defendants, the Commonwealth could not introduce evidence of their bad reputation. In answer to this, it may be said that the four officers testified that the defendants were professional thieves and known as such. This was more than mere evidence of reputation. Then too the act puts the reputation of the defendants directly in issue.

Some intimation was made that the Act of 1901, supra, is unconstitutional. This is not new legislation; it was practically a reënactment of the Act of March 13, 1862, P. L. 115, applying only to Philadelphia. This latter act was held constitutional in Byers et al. v. Commonwealth, 42 Pa. 89.

And now, February 2, 1934, the motion for a new trial is overruled, and the defendants directed to appear in Room C, at 10 a. m., on Friday, February 23, 1934, to receive the sentence of the court.